UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK J. SMITH,

       Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:12-cv-225

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Mark Smith filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI") in July 2007 alleging a disability onset date of January 1988 due to physical and mental impairments.[1] (Tr. 79-81). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo*

---

[1] Plaintiff received SSI benefits as a minor, and when he applied for benefits as an adult, he was denied in 1998. He applied again in July 2007, but the SSI claim was denied at a different time than his DIB claim. While it seems clear that the 2007 DIB claim was properly appealed, there is some question of whether the 2007 SSI denial was appealed. However, Plaintiff filed another SSI application on July 29, 2008, and it appears that the ALJ considered the July 2008 SSI and the July 2007 DIB claims in his decision (Id.; see also Tr. 173). Additionally, the first month Plaintiff could receive SSI payments based on his application is August 2008. (Tr. 19). Plaintiff's date first insured for DIB is April 1, 1997; he had multiple periods of entitlement after that date, but he is not insured for benefits after June 30, 2008 (Tr. 20).

1

before an Administrative Law Judge ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held on August 19, 2010. (Tr. 422-69). On January 12, 2011, ALJ Christopher McNeil denied Plaintiff's application in a written decision. (Tr. 16-27).

The record on which the ALJ's decision was based reflects that Plaintiff was 31 years old at the time of the administrative hearing. He has an eighth grade education and past relevant work as a laborer, loading dock worker, warehouse worker and cook. He last worked in 2007.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "asthma, synovial chondromatosis of the right elbow, post-traumatic stress disorder, mood disorder (NOS), borderline intellectual functioning, and personality disorder (NOS) with cluster B features." (Tr. 22). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work, with the following additional limitations:

> He can lift 50 pounds occasionally and 25 pounds frequently; he can push or pull 25 pounds with hand or foot controls. He can stand, walk, or sit about 6 hours each in an 8 hour workday. He must avoid concentrated exposure to humidity, fumes, odors, gases, and poor ventilation. He can perform only simple routine work that requires no more than occasional contact with supervisors and coworkers and no contact with the general public. He requires a low stress job with no production quotas or strict time standards.

(Tr. 24). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that, Plaintiff is able to perform his past relevant work as a loading dock worker and warehouse worker. The ALJ further concluded that even if Plaintiff is not able to perform his past relevant work, other jobs exist in significant numbers in the national economy that Plaintiff could perform including such jobs as floor waxer, hand packager, inspector and machine tender. (Tr. 26). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to properly explain the rationale for his RFC finding; 2) improperly weighing the medical opinions; and 3) failing to properly evaluate Plaintiff's learning disabilities and elbow impairments. Upon close analysis, I conclude that Plaintiff's assignments of error should be sustained, and based on the errors of the ALJ, this matter should be remanded for further proceedings.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Relevant Evidence and ALJ's Decision**

Plaintiff was evaluated by Dr. Chiappone at the request of the Social Security Administration on September 19, 2007 (Tr. 230-235). Dr. Chiappone observed that Plaintiff had reduced concentration, attention, and memory; he lacked insight and his judgment was short-sighted and impulsive; he could remember none of 3 objects with interference and 2 of 3 objects with a five minute delay; and that Plaintiff's fund of knowledge was below average. *Id.* On WISC-III intelligence testing, which were considered valid, Plaintiff obtained a Verbal IQ score of 71, a Performance IQ of 72, and a Full Scale IQ of 69. (Tr. 233-234). Despite these scores, which are within the range of mild mental retardation, Dr. Chiappone stated that Plaintiff's intellect "appeared to be in the borderline range, especially based on his adaptive functioning." (Tr. 233). Dr. Chiappone did not explain which aspects of Plaintiff's adaptive functioning led him to assume that Plaintiff was at a higher level of intellectual functioning than the IQ scores

5

signify. *Id.* Dr. Chiappone opined that Plaintiff was "capable of some basic tasks on a limited basis." (Tr. 234). He diagnosed Plaintiff with Mood Disorder, NOS; Borderline Intellectual Functioning; Personality Disorder, NOS with Cluster B features; and Substance Dependence, in Remission. (Tr. 234). He assigned a GAF score of 48, which indicates "serious" impairments. *Id.*

Plaintiff treated briefly with Paula Klusman, LPCC, a therapist at Mercy Professional Services, who reported in September 2008 that during the three sessions Plaintiff attended, he had poor eye contact, a blunted affect, and his mood appeared depressed. (Tr. 255). At his final visit with Ms. Klusman, Plaintiff reported that he had become homeless and had transportation problems. (Tr. 256).

On October 3, 2007, psychologist Bonnie Katz rendered a functional capacity assessment. (Tr. 236-52). She concluded that Plaintiff had a mood disorder, borderline intellectual functioning, a personality disorder, substance dependence in remission. (Tr. 239-44). Dr. Katz determined that Plaintiff had mild restrictions in his activities of daily living and mild limitations in maintaining concentration, persistence or pace. (Tr. 246). She further determined that Plaintiff had moderate difficulties in maintaining social functioning, and that Plaintiff had no episodes of decompensation. (Tr. 246). While Dr. Katz noted that Plaintiff was not significantly limited in understanding and following simple instructions, his borderline intellectual functioning would render him moderately impaired as tasks become more complex. (Tr. 253). She also noted that Plaintiff's stress tolerance is moderately limited, and that Plaintiff had no substantial loss of ability to meet the demands of simple, routine tasks within a low stress, minimal social exposure environment. (Tr. 253).

6

On October 20, 2008, Plaintiff had a second psychological consultative evaluation at the request of the Social Security Administration. (Tr. 259-266). Dr. Leisgang performed this evaluation, and she observed that Plaintiff "appeared somewhat anxious and depressed," as demonstrated by the fact that he maintained limited eye contact, displayed a downcast facial expression, and grew tearful during the evaluation. (Tr. 261). She found that Plaintiff's short term memory skills were only marginally adequate, as he could recall 5 digits forward but only 4 digits backward; that his attention and concentration skills were not strong, as he could not even correctly calculate serial sevens; and that his math skills were weak. (Tr. 261-262).

Dr. Leisgang concluded that Plaintiff "may have difficulty relating adequately to others in completing simple, repetitive tasks," that "his pace may be slowed by his depressive symptomatology," and that "his attention and concentration … may deteriorate over extended time periods, slowing his performance in completing simple repetitive tasks." (Tr. 264). She diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate; Alcohol Dependence in early remission; and Personality Disorder, NOS, and assigned a GAF score of 50, indicating "serious" impairments. (Tr. 263). Dr. Leisgang opined that Plaintiff has "moderate" limitations in social functioning, and "may have difficulty relating adequately to others in completing simple repetitive tasks." (Tr. 264). Likewise, she opined that Plaintiff has "moderate" limitations in concentration, persistence and pace, such that "his attention and concentration skills … may deteriorate over extended time periods, slowing his performances in completing simple repetitive tasks" and that his pace may be slowed by his depressive symptomatology. *Id.*

State agency psychologist Marianne Collins reviewed Plaintiff's medical records on November 20, 2008. (Tr. 267-84). She determined that Plaintiff was moderately impaired in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 277). She determined that Plaintiff would be able to perform work which is simple and routine and which does not require more than occasional superficial contact with others in completion of his job duties. (Tr. 283).

Plaintiff began treatment at Centerpoint Health Center, a.k.a. Talbert House, in January 2009. (Tr. 298-313; 334-375). At the intake appointment, Plaintiff's first therapist, Heather Robinson, observed that Plaintiff had fair impulse control, fair remote memory, and fair judgment; in fact, one of Plaintiff's presenting problems was that he would become violent at times when angry. (Tr. 305, 309). Likewise, at his initial psychiatric visit in February 2009, Dr. Cheng observed that Plaintiff had fair to poor eye contact, constricted affect, and limited to fair judgment. (Tr. 301). Plaintiff's problems with anger management are also demonstrated by his multiple incarcerations, which include (among others) serving 6-7 months as a juvenile in 1999 and four months in 2000, both for domestic violence. (Tr. 309).

On March 30, 2009, psychologist Tasneem Khan reviewed Plaintiff's records and affirmed the October 3, 2007 assessment of Dr. Katz. (Tr. 314).

Plaintiff treated with Therapist Robinson at Centerpoint approximately weekly from February 2009 through October 2009, and with Therapist Doolittle approximately every two weeks in March and April 2010. (Tr. 334-375). Plaintiff also treated with his psychiatrist, Dr. Cheng, approximately monthly from September 2009 through April 2010. *Id.* There was a short gap in treatment between October 2009 and March 2010;

8

Plaintiff explained that he had spent a month and a half in jail for domestic violence against his wife. (Tr. 347). A detailed summary of the substance of these visits, with focus on objective findings, is found in Appendix 1.

In June 2009, therapist Robinson observed that Plaintiff's mood was improving, but he continued to have nightmares. (Tr. 357). In July 2009, Plaintiff's irritability increased and he was more easily aggravated by his wife and children. (Tr. 355). In August 2009, Plaintiff's mood and irritability had improved somewhat, but had persistent paranoia and severe discomfort with being around people or in crowds. (Tr. 353). In late August 2009, Plaintiff again had increased irritability, depression, and hopelessness. (Tr. 352). Dr. Cheng changed Plaintiff's medications frequently. (Tr. 334-375).

Dr. Cheng completed a Mental Impairment Questionnaire on June 30, 2010, in which he opined that Plaintiff is "unable to meet competitive standards" in five abilities or aptitudes needed to perform unskilled work. (Tr. 386). Dr. Cheng rated many other abilities or aptitudes as "seriously limited, but not precluded." *Id.*

Medical expert Terry Schwartz responded to interrogatories about Plaintiff's mental condition on July 21, 2010 and testified at the hearing. (Tr. 378-82, 426-37). Dr. Schwartz found that Plaintiff has anxiety in the form of PTSD, affective disorder, and personality disorder. (Tr. 378). He opined that Plaintiff has moderate functional limitations in: activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 379). Dr. Schwartz noted that Dr. Leisgang had all moderate ratings of severity in these areas, and the moderate limitations are supported by the records from Centerpoint Health and Talbert House's GAF scores.

9

(Tr. 379). Dr. Schwartz concluded that Plaintiff would function in an adequate fashion given a low stress work environment without much time pressure and limited social interaction (Tr. 382). He determined that Plaintiff could work full time from a psychological perspective. (Tr. 382).

With respect to Plaintiff's physical impairment, the record indicates that Plaintiff has a long history of pain, swelling, and restricted motion in his right elbow, but it has worsened over time. (Tr. 214). He was seen at an ER in April 2005, complaining of chronic right elbow pain which radiated down to his wrist, worse with lifting objects or bending of his elbow, and which caused him to drop things. (Tr. 214-216). The ER physician found that Plaintiff's "right elbow [had] some deformity over the lateral epicondyle. The patient has mild limited range of motion pain that is more pronounced with flexion." (Tr. 215).

Plaintiff sought treatment at another ER on April 28, 2007 for his right elbow pain (Tr. 222-226). The ER physician found "the elbow has incomplete extension to about 120 degrees. There is some edema around the elbow." (Tr. 222). Radiographs of Plaintiff's right elbow revealed arthritis with hypertrophic spurring, along with small calcific densities posterior to the distal humeral shaft. (Tr. 224).

On December 8, 2008, Dr. Andrew Cross diagnosed Plaintiff with synovial chondromatosis in his right elbow. (Tr. 287). On that date, Plaintiff's radial, median and ulnar nerve motor and sensory examination were normal. (Tr. 287). Plaintiff's right elbow range of motion had 35 degrees of flexion contracture to 90 degrees of flexion (Tr. 287). His left elbow range of motion was from 0 degrees of extension to 128 degrees of flexion. (Tr. 287). An x-ray showed multiple calcified round bodies within

the elbow joint. (Tr. 287).  Dr. Cross recommended surgical removal of the synovial bodies, as well as a synovectomy.  (Tr. 287).  However, Plaintiff wanted to consult with his family physician, Dr. Pisati, before consenting to surgery. (Tr. 286).

In April 2009, medical consultant Dr. W. Jerry McCloud evaluated Plaintiff's physical residual functional capacity.  He determined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and sit for 6 hours of an 8-hour workday, and had unlimited capacity to push and pull.  (Tr. 316).  He found that Plaintiff had no postural or manipulative limitations, but that Plaintiff should avoid concentrated exposure to humidity and fumes.  (Tr. 317-19).

In light of the forgoing, at step two of the sequential evaluation, the ALJ found that Plaintiff's asthma, synovial chondromatosis of the right elbow, post-traumatic stress disorder, mood disorder, borderline intellectual functioning, and personality disorder were "severe" impairments.  (Tr. 22).  However, the ALJ found that these impairments did not rise to Listing-level severity.  (Tr. 23).  ALJ McNeil found that Plaintiff has an RFC for work at the level of medium exertion, but that he must avoid concentrated exposure to humidity, fumes, odors, gases and poor ventilation; can perform only simple and routine work that requires no more than occasional contact with supervisors and coworkers and no contact with the general public; and is limited to low stress jobs with no production quotas or strict time standards.  (Tr. 24).  In determining Plaintiff's RFC relating to his mental limitations, the ALJ gave significant weight to the opinion of Dr. Schwartz, the medical expert; as well as the opinions Drs. Leisgang, Collins and Khan. The ALJ concluded that their opinions were consistent and supported by the objective medical evidence and credible portion of the evidence pertaining to Plaintiff's activities

of daily living. (Tr. 24). The ALJ gave "little weight" to the opinions of Dr. Chiappone and Dr. Katz because their findings were based on "an inferior longitudinal history." (Tr. 24). The ALJ afforded "less weight" to the opinions of Dr. Cheng, Plaintiff's treating psychiatrist. The ALJ noted that Dr. Chen suggested that Plaintiff was "seriously limited" in his ability to perform work-related functions, however, he indicated that Plaintiff had only mild to moderate functional limitations and did not have a low IQ or reduced intellectual functions. Thus, the ALJ found that Dr. Cheng's opinion was not fully supported by the objective medical evidence, by his treatment notes, or by the credible portion of the evidence pertaining to the Plaintiff's activities of daily living.

With respect to the functional limitations associated with Plaintiff's physical impairments, the ALJ gave "significant weight" to the state agency physician who reviewed the medical evidence in April 2009 and opined that Plaintiff was capable of performing a range of medium work because it was consistent with the objective medical evidence and not contradicted by any treating medical source. (Tr. 25). Based upon a hypothetical question, containing the same restrictions included in Plaintiff's RFC, the vocational expert testified that such an individual could perform Plaintiff's past work as a loading dock worker and warehouse worker, and could also perform other work, such as floor waxer, hand packager, inspector, or machine tender. (Tr. 463-464). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by Agency regulations.

**C. The ALJ's evaluation of the Plaintiff's mental and physical impairments is not supported by Substantial Evidence.**

*1. Mental Impairments*

With respect to his mental impairments, Plaintiff argues that the ALJ improperly relied on the testimony of Dr. Schwartz because it was vague and inconsistent with the record. Plaintiff further asserts that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating psychiatrist. The undersigned agrees.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to

support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009 WL 648597, *13 (S.D. Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

Here, the ALJ's decision indicates only that he afforded "significant weight" to Dr. Swartz' opinion (the medical expert) because it was most consistent with the objective evidence. With respect to Dr. Cheng, Plaintiff's treating psychiatrist, the ALJ afforded "less weight" to his findings. The ALJ noted that Dr. Cheng suggested that Plaintiff was "seriously limited" in his ability to perform work-related functions, however, he indicated that Plaintiff had only mild to moderate functional limitations and did not have a low IQ or reduced intellectual functions. Thus, the ALJ found that Dr. Cheng's opinion was "not fully supported by the objective medical evidence, by his treatment notes, or by the credible portion of the evidence pertaining to the Plaintiff's activities of daily living."

Other than those two statements, the ALJ's decision fails to provide any additional rational for the weight assigned to Dr. Swartz and/or Dr. Cheng's findings. Notably, the ALJ's analysis of Dr. Cheng's opinion was included in his evaluation of whether Plaintiff's impairments met or equaled any of the Listings for mental

impairments. The ALJ omitted any discussion of Dr. Cheng's opinion during his RFC analysis. Such omission prevents the Court from engaging in meaningful review of the ALJ's decision.

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). See also *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Furthermore, as recently explained by the Sixth Circuit:

> The failure to provide "good reasons" for not giving Dr. Onady's [Plaintiff's treating source] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation. *See Wilson*, 378 F.3d at 544. For example, the conclusion that Dr. Onady's opinions "are not well-supported by any objective findings" is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, see 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), reh'g denied (May 2, 2013).

The undersigned recognizes that it is the duty of the ALJ, and not the Court, to weigh the medical evidence. However, the ALJ's decision provides no indication that he applied the factors set out in § 404.1527(c)—supportability, consistency, specialization—when weighing the consultative doctors' opinions. Thus, the ALJ's failure to fully and clearly articulate his rationale for the weight given to the opinion evidence prevents this Court from engaging in meaningful review of the ALJ's decision in this regard. *See Hurst*, 753 F.2d at 517; Social Security Ruling (SSR) 82–62. Accordingly, this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

 2. *Right elbow and Cognitive Impairments*

Plaintiff's next assignment of error asserts that the ALJ failed to account for Plaintiff's learning disabilities and his elbow impairment in the RFC. With respect to Plaintiff's cognitive impairments, Plaintiff notes that both Dr. Leisgang and Dr. Chiappone opined that Plaintiff has borderline to low average cognition (and in fact, his full scale IQ was below 70). (Tr. 233-234, 262). Plaintiff further noted that the first representative of the Social Security Administration to interact with Plaintiff, the Field Office employee who assisted Plaintiff with his application in July 2007, noted that Plaintiff's memory was "poor to fair." (Tr. 104). The record further shows that Plaintiff needed the assistance of his wife to complete the intake questionnaire from Paula

Klusman at Mercy Professional Services, and that his wife also filled out the questionnaires from the Disability Determination Services for Plaintiff. (Tr. 126, 130, 138, 156, 164, 172, 191, 255). In light of the foregoing, Plaintiff maintains that the ALJ's RFC assessment limiting Plaintiff to "simple repetitive tasks" fails to properly account for cognitive impairments including his memory problems and limited ability to read.

Plaintiff further argues that the ALJ also failed to properly account for his right elbow impairment. Relying on the findings of a non-examining state agency physician, the ALJ concluded that Plaintiff is able to perform medium work, i.e. he has the ability to, inter alia, lift 50 pounds occasionally and 25 pounds frequently; and push or pull 25 pounds with hand or foot controls. As noted above, however, Plaintiff has a flexion contracture in his right elbow, which is attributable to synovial chondromatosis, a condition which the ALJ admits is "severe." (Tr. 22, 287). Plaintiff's orthopedic specialist, Dr. Cross, documented the fact that Plaintiff is unable to fully bend or extend his arm, and that he has significant pain in his right elbow. (Tr. 215, 222, 287). Plaintiff asserts that even disregarding Plaintiff's complaints of pain and weakness, the Plaintiff's significant flexion contracture (with a loss of more than 30º of the ability to straighten his arm and a loss of at least 30º of flexion) is more than enough to impair his ability to reach and to handle very large objects. (Tr. 287).

In light of the ALJ's failure to properly evaluate the medical evidence of record, the undersigned finds that the ALJ's evaluation of Plaintiff's cognitive impairments should also be revisited on remand. The undersigned also finds that further fact-finding is necessary to properly evaluate Plaintiff's elbow impairment. Thus, due to the complicated nature of Plaintiff's elbow impairment, the undersigned finds that the

services of a medical advisor should be obtained on remand in order to reevaluate whether Plaintiff's impairments are disabling.

### III.  Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place."  *Faucher*, 17 F.3d at 175.  All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date*.   Id.* at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation.  As no further matters remain pending for the Court's review, this case be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARK J. SMITH,                                 Case No. 1:12-cv-225

      Plaintiff,                              Spiegel, J.
                                                 Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).